The facts: (1) On 15 May, 1926, the defendant, Vance Plumbing and Electric Company, Inc., entered into a certain contract with the board of commissioners of Franklin County, N.C. as alleged in the complaint, "to provide all materials and perform all the labor and work in and about the installation of the complete plumbing in the Franklin County Home." This is admitted by defendant Insurance Company. It was agreed in this contract that "the contractor shall furnish standard form bond in the amount of $1,165." The contract price agreed upon was $2,330. The statute, C. S., 2445, makes it a misdemeanor for the public agencies mentioned not to require a bond under the contract and under the statute the total bond should have been $2,115.50.
(2) The Metropolitan Casualty Insurance Company of New York, the defendant, gave a bond for the performance of this contract in the sum of $1,165, with a stipulation "that in no event shall the surety be liable for a greater sum than the penalty of this bond." *Page 631 
(3) The plaintiff, the Standard Supply Company, Inc., furnished certain material to the defendant, Vance Plumbing and Electric Company, Inc., which went into the installation of the plumbing in the Franklin County Home, amounting to $1,714.67.
(4) The Vance Plumbing and Electric Company, defendant, commenced doing business with the Standard Supply Company, Inc., in 1925, and the total amount of merchandise purchased was $6,800.66. The Vance Plumbing and Electric Company, Inc., did not begin purchasing supplies for the Franklin County Home from the Standard Supply Company, Inc., until some time after the middle of July, 1926. The payments of $600 on 11 August, and $1,107.67 on 17 September, were made on account, and were applied to the oldest portion of the indebtedness of the Vance Plumbing and Electric Company, Inc., due to the Standard Supply Company, Inc. Being applied that way all of the amount was absorbed before the Franklin County Home account began. On 17 September, when the payment of $1,107.64 was made, approximately $550 worth of goods had been delivered on the Franklin County Home job. The terms were sixty days. There was nothing due on that job at that time. The $500 payment was likewise applied to the oldest portion of the Vance Plumbing and Electric Company, Inc., account. There was nothing on the checks to indicate their source, that they were payments by the commissioners of Franklin County to Vance Plumbing and Electric Company, Inc., on the Franklin County Home job. The Vance Plumbing and Electric Company, Inc., simply sent the checks to be applied on their account to the Standard Supply Company, Inc. No instructions were given to apply them to any specific account. The Vance Plumbing and Electric Company, Inc., owed no other money outside of this account being sued for by the Standard Supply Company, Inc., and the total amount of the balance of the indebtedness is $3,217.04. Included in that amount is $1,714.67, the amount of fixtures and equipment — the material that went into the Franklin County Home and for which the present action is instituted, an itemized statement of which is set out in the complaint of the plaintiff.
T. A. Polk, a witness for plaintiff, testified: "The money was applied in accordance with the instructions of your client (Vance Plumbing and Electric Company, Inc.), to the oldest portion of the account. . . . Everything was charged to a general account, and payments credited to the general account. We have not received any credits for bonded jobs. I know this because the money was paid before the bonded job money became due."
It was contended by defendant, Metropolitan Casualty Insurance Company, that the board of commissioners of Franklin County had paid to the defendant, Vance Plumbing and Electric Company, Inc., on the *Page 632 
contract $1,980.50. The record discloses no sufficient evidence that any of the checks paid by the board of commissioners of Franklin County to the defendant, Vance Plumbing and Electric Company, Inc., went to plaintiff to be applied on the debt in controversy.
The court below charged the jury, as follows: "I direct you, gentlemen, if you find the facts to be as testified to by all the witnesses, and shown by the evidence introduced, that you will answer the issue $1,714.67, with interest from 1 January, 1927."
The issue submitted to the jury and their answer thereto was as follows: "In what amount are defendants indebted to the plaintiff? Answer: $1,714.67, with interest from 1 January, 1927."
Judgment was rendered in accordance with the verdict against the Vance Plumbing and Electric Company, Inc., and the Metropolitan Casualty and Insurance Company of New York. The defendant, Vance Plumbing and Electric Company, Inc., did not appeal.
(1) The defendant, Insurance Company, at the close of plaintiff's evidence and at the conclusion of all the evidence made a motion for judgment as in case of nonsuit, which was refused. Defendant excepted and assigned error.
(2) The defendant Insurance Company moved to reduce the amount of the verdict to the original amount of the bond, $1,165. The motion was refused, defendant excepted and assigned error.
The other material facts will be set forth in the opinion.
We think the court below correct in the refusal of the motions made by defendant for judgment as in case of nonsuit. C. S., 567.
This action was brought under C. S., 2445, as amended by chapter 100 of the Public Laws 1923. The plaintiff obtained before the clerk a judgment by default final against the defendants. Upon proper notice the judgment was set aside. A similar judgment was held to be irregular in Jeffries v.Aaron, 120 N.C. 167. The contention of defendants was to the effect that the judgment should have been by default and inquiry, as the complaint, although verified, did not allege an account stated but the action was an open account for goods sold and delivered. The court below so held with defendants and in this we think there was no error. See C. S., 593, 595, 596, 597.
It was held in Witt v. Long, 93 N.C. p. 388: A judgment by default final is irregular in an action on an open account for goods sold and delivered, where there is no express contract alleged in the complaint, *Page 633 
but the plaintiffs only seek to recover on the implied contract the reasonable value of their goods. In such case, the judgment should be by default and inquiry. Bostwick v. R. R., 179 N.C. 485; Brooks v. White,187 N.C. 656; Baker v. Corey, ante, 299.
If the verified complaint alleges a breach of an express promise to pay absolutely a definite sum of money particularly specified for a valuable consideration, the judgment by default final is proper. Hartman Co. v.Farrior, 95 N.C. 177; Scott v. Life Asso., 137 N.C. 515; Currie v.Mining Co., 157 N.C. 209; Hyatt v. Clark, 169 N.C. 178; Miller v.Smith, 169 N.C. 210; Montague v. Lumpkins, 178 N.C. 270.
When an account is rendered, a failure to object to it within a reasonable time will be regarded as an admission of its correctness by the party. Davis v. Stephenson, 149 N.C. 113.
The defendants, to have a judgment set aside for irregularity, for the cause above stated, must show a meritorious defense. Jeffries v. Aaron,120 N.C. 167; Fowler v. Fowler, 190 N.C. 536. This was shown in this action.
The next question is the application of payments. The principle is thus stated in Stone v. Rich, 160 N.C. at pp. 163-4: "There is no rule in the law better settled than the one in regard to the application of payments: (1) A debtor owing two or more debts to the same creditor, and making a payment, may, at the time, direct its application to any one of the debts. The right is lost if the particular application is not directed at the time of the payment. (2) If the debtor fails to make the application at the time of the payment, the right to apply it belongs to the creditor. (3) If neither debtor nor creditor makes it, the law will apply it to the unsecured debt or the one for which the creditor's security is most precarious, or, as sometimes expressed, according to its own view of the intrinsic justice and equity of the case," citing numerous authorities.
"In the absence of an application of a payment by either the debtor or creditor, the law will apply it to the unsecured debt, or the one for which the security is most precarious or according to its own view of intrinsic justice and equity. Stone Co. v. Rich, supra; Hempfield R. Co. v.Thornburg, 1 W. Va. 261." 8 S.E. Digest, N.C. ed., p. 10155.
"A creditor receiving voluntary payment without instructions as to application thereof may apply it to any claim he chooses." Austin v.Southern Home Bldg. Loan Assn., 122 Ga. 439, 50 S.E. 382; Stone Co. v.Rich, supra; Hempfield R. Co. v. Thornburg, supra. 8 S.E. Digest, p. 10152. The charge of the court below was correct.
The last material question on the record is the refusal of the court below to allow defendant's motion to reduce the amount of the verdict to the actual amount of the bond given, $1,165. *Page 634 
Public Laws 1923, chapter 100, sections 1 and 2, are as follows: (1) "That section two thousand four hundred and forty-five of the Consolidated Statutes be amended by adding thereto the following: Every bond given by any contractor to any county, city, town or other municipal corporation for the building, repairing or altering of any building, public road or street, as required by this section, shall be conclusively presumed to have beengiven in accordance therewith, whether such bond be so drawn as to conformto the statute or not, and this statute shall be conclusively presumed tohave been written into every such bond so given." (Italics ours.)
(2) "Only one action or suit may be brought upon such bond, which said suit or action shall be brought in the county in which the building, road or street is located, and not elsewhere. In all suits instituted under the provisions of this statute, the plaintiff or plaintiffs shall give notice to all persons, informing them of the pendency of the suit, the name of the parties, with a brief recital of the purposes of the action, which said notice shall be published at least once a week for four successive weeks in some newspaper published and circulating in the county in which the action is brought, and if there be no newspaper, then by posting at the courthouse door and three other public places in such county for thirty days. Proof of such service shall be made by affidavit as provided in case of the service of summons by publication. All persons entitled to bring and prosecute an action upon the bond shall have the right to intervene in said action, set up their respective claims, provided that such intervention shall be made within twelve months from the bringing of the action, and not later. If the recovery on the bond shall be inadequate to pay the amounts found due to all of the claimants, judgment shall be given to each claimant pro rata of the amount of the recovery. The surety on such bond may pay into court fordistribution among the claimants the full amount of his liability, to wit,the penalty named in the bond, and upon so doing, such surety shall berelieved of further liability." (Italics ours.)
Hoke, J., in Warner v. Halyburton, 187 N.C. at p. 415, construing C. S., 2445, says: "The contract in question provides that the construction company shall build and complete the schoolhouse at Apex, N.C. providing all the materials, etc., therefore at their own expense, at the price of $58,083. There is no stipulation in the agreement that the contractor shall pay either the laborers or the material men, and a perusal of the instruments throughout will show that they are merely designed to secure the satisfactory and proper completion of a turnkey job, so far as the municipality is concerned, and that no interest ultra is provided for or contemplated. The case presented comes directly within the *Page 635 
decisions of the Court in McCausland v. Construction Co., 172 N.C. 708, and Mfg. Co. v. Andrews, 165 N.C. 285." In Brick Co. v. Gentry,191 N.C. 636, the Warner case, supra, is cited and the whole matter is thoroughly discussed. See Harrison v. Transit Co., 192 N.C. p. 545.
The General Assembly of 1923, chapter 100, Public Laws, supra, amended C. S., 2445, as we construe the matter, to meet the decisions in the above cases, so as to protect the laborers and materialmen, where the bond does not make provisions to pay them.
In Hughes v. Lassiter, 193 N.C. at p. 657, it is said: "It is well settled in this jurisdiction that all contracts subsequently made and entered into are interpreted in reference to the existing law pertinent to the subject. The laws in force become a part of the contract as if they were expressly incorporated. House v. Parker, 181 N.C. 40; Johnson v.Yates, 183 N.C. 24; Douglas v. Rhodes, 188 N.C. 585; Ryan v. Reynolds,190 N.C. 563; Humphrey v. Stephens, 191 N.C. 101; Electric Co. v.Deposit Co., ibid., 653."
The question of the amount of the bond did not arise in the cases cited and we are of the opinion the amendment to C. S., 2445, supra, was passed to meet these decisions.
C. S., 2445, provided a scale for the amount of the bond to be taken in reference to the contract price, and provides that any of the public agencies mentioned that fails to require the bond as fixed by the statutes is guilty of a misdemeanor. We think that this provision, making it a misdemeanor, is still applicable where the amount of bond required by the public agencies, in accordance with the terms of the statute, is not taken. We cannot hold, as we construe the amendment to the statute, to meet the decisions of this Court, that the Legislature intended to deal with the matter of the bond to be taken.
It is held in Robinson Mfg. Co. v. Blaylock, 192 N.C. p. 407, in a carefully written opinion by Stacy, C. J., at p. 409: "On 28 April, 1926, the surety paid into court the sum of $4,576.00, the full penalty of its bond (unless it be liable for interest thereon), for distribution pro rata
among the laborers and materialmen as provided by the statute. . . . (p. 411) It is stipulated in the present bond that `this bond is subject to theprovisions of section 2445 of the Revised Statutes of North Carolina andamendments thereto.' (Italics ours.) The right of the laborers and materialmen to recover on said bond is conceded, and it has been paid in full. The contest is over the retained percentages withheld under the contract and now in the hands of the owner. . . . (pp. 415-16) The apparent hardship of the case arises from the fact that the bond given by the contractor and taken by the board of education for the benefit of the laborers and materialmen is not large enough, or it is not as large as contemplated by the statute, but this is a deficiency which the *Page 636 
courts are not able to supply. Nolan Co. v. Trustees, supra (190 N.C. 250). His Honor correctly held that the liability of the American Surety Company on its bond would not exceed the maximum penal sum of $4,579.00, which has been paid into court. S. v. Martin, 188 N.C. 119."
The latter part of section 2, Public Laws 1923, chapter 100, supra, would indicate "the penalty named in the bond" was the limit of liability, and this was the construction in Robinson Mfg. Co. v. Blaylock, supra.
It is a matter of common knowledge that premiums are based on the amount of the liability as written in the bond. Without some positive declaration of the legislative intent, so that bond companies can be governed accordingly, we cannot hold the bond should be increased over the contract stipulation. Any other view, we think, would do an injustice. We think that the judgment should be reduced to the amount of the bond, $1,165.00. SeeRobinson Mfg. Co. v. Blaylock, supra.
For the reasons given the assignment of error in the court below, made by defendant, cannot be sustained, except that the judgment should be reduced to the amount of the bond given and interest as stated.
Modified and affirmed.